UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Kevin P. Ramsey</u>,
     Claimant

     v.                                    Civil No. 06-cv-195-SM
                                             Opinion No. 2007 DNH 021

<u>Jo Anne B. Barnhart, Commissioner</u>,
<u>Social Security Administration</u>
     Defendant

## **O R D E R**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant, Kevin P. Ramsey, moves to reverse the Commissioner's decision denying his application for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 423, and Supplemental Security Income Benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-1383c.  In support of his motion, claimant says the Administrative Law Judge ("ALJ") failed to give appropriate weight to the opinions of his treating physicians. Claimant also faults the ALJ for improperly concluding that his testimony at the hearing about the disabling nature of his impairment was not entirely credible.  The Commissioner objects and moves for an order affirming her decision.

**Factual Background**

I.   Procedural History.

On February 4, 2004, claimant filed an application for disability insurance benefits and on May 1, 2004, he filed an application for supplemental security income benefits, alleging that he had been unable to work since December 15, 2003, due to a complex partial seizure disorder.  His applications were denied at the initial level of review and he sought an administrative hearing before an ALJ.

On October 18, 2005, claimant, who was represented by counsel, and claimant's mother appeared and testified before the ALJ, who considered claimant's application de novo.  On December 5, 2005, the ALJ issued his order, concluding that claimant retained the residual functional capacity to perform at least some of his past relevant work.  Accordingly, the ALJ determined that claimant was not disabled, as that term is defined in the Act, at any time prior to the date of his decision.

Claimant then sought review of the ALJ's decision by the Appeals Council.  On April 1, 2006, however, the Appeals Council denied his request, thereby rendering the ALJ's decision a final decision of the Commissioner, subject to judicial review.  In May

of 2006, claimant filed an action in this court, asserting that the ALJ's decision was not supported by substantial evidence and seeking a judicial determination that he is disabled within the meaning of the Act.  Claimant then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 10).  The Commissioner objected and filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 11).  Those motions are pending.

II.  <u>Stipulated Facts</u>.

Pursuant to this court's Local Rule 9.1(d), the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 12), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I.  <u>Properly Supported Findings by the ALJ are</u>
     <u>Entitled to Deference</u>.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings of the Commissioner are

3

conclusive if supported by substantial evidence.[1]  See 42 U.S.C. §§ 405(g), 1383(c)(3); Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991).  Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the adverse position.  See Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").  See also Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222–23 (1st Cir. 1981).

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence.  See Burgos Lopez v. Secretary of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984) (citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)).  It is "the responsibility of the [Commissioner] to determine issues

---

[1]    Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.  Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966).

of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." Irlanda Ortiz, 955 F.2d at 769 (citation omitted).  Accordingly, the court will give deference to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings.  See Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health & Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

II.  The Parties' Respective Burdens.

An individual seeking Social Security benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  See also 42 U.S.C. § 1382c(a)(3).  The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment.  See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove that his impairment prevents him from

performing his former type of work.  See Gray v. Heckler, 760
F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary of
Health & Human Services, 690 F.2d 5, 7 (1st Cir. 1982)).
Nevertheless, the claimant is not required to establish a doubt-
free claim.  The initial burden is satisfied by the usual civil
standard: a "preponderance of the evidence."  See Paone v.
Schweiker, 530 F. Supp. 808, 810–11 (D. Mass. 1982).

     Provided the claimant has shown an inability to perform his
previous work, the burden shifts to the Commissioner to show that
there are other jobs in the national economy that he can perform.
See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1,
2 (1st Cir. 1982).  If the Commissioner shows the existence of
other jobs that the claimant can perform, then the overall burden
to demonstrate disability remains with the claimant.  See
Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974);
Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

     In assessing a disability claim, the Commissioner considers
both objective and subjective factors, including: (1) objective
medical facts; (2) the claimant's subjective claims of pain and
disability, as supported by the testimony of the claimant or
other witnesses; and (3) the claimant's educational background,

age, and work experience.  See, e.g., Avery v. Secretary of
Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986);
Goodermote, 690 F.2d at 6.  When determining whether a claimant
is disabled, the ALJ is also required to make the following five
inquiries:

> (1)  whether the claimant is engaged in substantial
>      gainful activity;
>
> (2)  whether the claimant has a severe impairment;
>
> (3)  whether the impairment meets or equals a listed
>      impairment;
>
> (4)  whether the impairment prevents the claimant from
>      performing past relevant work; and
>
> (5)  whether the impairment prevents the claimant from
>      doing any other work.

20 C.F.R. § 404.1520.  See also 20 C.F.R. § 416.920.  Ultimately,
a claimant is disabled only if his:

> physical or mental impairment or impairments are of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm her decision.

**Discussion**

I.   <u>Background – The ALJ's Findings</u>.

In concluding that Mr. Ramsey was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920.  Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since his alleged disability onset date of December 15, 2003. Next, he concluded that claimant suffers from a partial complex seizure disorder.  Administrative Record ("Admin. Rec.") at 17. Nevertheless, the ALJ determined that claimant's impairment did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1 of the regulations.  <u>Id</u>.

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to perform the exertional demands of

medium exertional work.[2]  He noted, however, that claimant's RFC

was limited by the fact that he cannot safely climb or balance,

nor is he able to drive, operate heavy machinery, or be near open

machinery.  In light of those findings, the ALJ concluded that

claimant's impairment does "not prevent him from performing much

of his past relevant work, specifically as a cook or tire

inspector."  Admin. Rec. at 20.  Consequently, the ALJ concluded

that claimant was not "disabled," as that term is defined in the

Act, through the date of his decision.


II.  <u>Seizure Disorders and Disability Determinations</u>.

     Due largely to recent medical advances, people suffering

from epilepsy or seizure disorders can now obtain substantial

relief.  As a consequence, the fact that one suffers from

_____

[2]     "RFC is what an individual can still do despite his or her
functional limitations.  RFC is an administrative assessment of
the extent to which an individual's medically determinable
impairment(s), including any related symptoms, such as pain, may
cause physical or mental limitations or restrictions that may
affect his or her capacity to do work-related physical and mental
activities.  Ordinarily, RFC is the individual's maximum
remaining ability to do sustained work activities in an ordinary
work setting on a regular and continuing basis, and the RFC
assessment must include a discussion of the individual's
abilities on that basis."  Social Security Ruling, <u>Policy
Interpretation Ruling Titles II and XVI: Assessing Residual
Functional Capacity in Initial Claims</u>, SSR 96-8p, 1996 WL 374184
at *2 (July 2, 1996) (citation omitted).

seizures does not necessarily compel the conclusion that he or she is disabled.

> As a result of modern treatment which is widely available, only a small percentage of epileptics, who are under appropriate treatment, are precluded from engaging in substantial gainful activity (SGA). Situations where the seizures are not under good control are usually due to the individual's noncompliance with the prescribed treatment rather than the ineffectiveness of the treatment itself. Noncompliance is usually manifested by failure to continue ongoing medical care and to take medication at the prescribed dosage and frequency.  Determination of blood levels of anticonvulsive drugs may serve to indicate whether the prescribed medication is being taken.  In a substantial number of cases, use of alcohol has been found to be a contributory basis for the individual's failure to properly follow prescribed treatment.  In such cases, the individual's alcohol abuse should be evaluated.

Social Security Ruling, Titles II and XVI: The Role of Prescribed Treatment in the Evaluation of Epilepsy, SSR 87–6, 1987 WL 109184 at * 1 (1987).  So, in cases such as this, to demonstrate disability, a claimant must do more than merely show that he or she suffers from a seizure disorder.  Instead, a claimant must show that the seizures are either so poorly controlled (despite compliance with a prescribed treatment regimen) or are of such frequency and/or severity, that they preclude him or her from engaging in any substantial gainful work which exists in the national economy.  See, e.g., Banks v. Secretary of Health & Human Services, 15 F.3d 1082, 1994 WL 1082 at *3 (9th Cir. Feb.

3, 1994) ("[T]he ALJ's finding of no disability is supported by
substantial evidence.  While it is undisputed that [claimant]
suffers from a seizure disorder that is not entirely controlled
with medication, the medical and vocational evidence of record
establishes that this condition was not so severe as to preclude
her from performing the modest requirements of the light and
sedentary jobs identified by the vocational expert as appropriate
for an individual with her limitations.").

III. <u>Opinions of Claimant's Treating Sources</u>.

In assailing the ALJ's disability determination, claimant
first asserts that the ALJ failed to ascribe proper weight to the
opinions of his treating physicians.  He points to a November,
2004, report by Dr. Leslie Surani, M.D., in which Dr. Surani
noted that claimant was "doing worse," and had suffered three
seizures within a five week period.  Admin. Rec. at 222.  Dr.
Surani also reported that she provided claimant with a note
stating that he "is not gainfully employed at this time and
<u>cannot work due to his disability</u>."  <u>Id</u>. (emphasis supplied).
Additionally, claimant points to an August, 2005, note from Karen
Gilbert, a nurse practitioner, in which Ms. Gilbert stated that
claimant "has been advised not to work at this time while he
undergoes pre-surgical evaluation."  <u>Id</u>. at 330.  Finally,

11

claimant relies on the opinion of Dr. Peter Williams, M.D.,
director of the Dartmouth Epilepsy Program.  In a letter dated
February 1, 2006, (and forwarded to the Appeals Council in March
of 2006), Dr. Williams opined that claimant suffers from
"medically refractory seizures . . . the chances of his becoming
seizure free with additional medical trials is less than 5%.
Please consider [claimant] disabled."  Exhibit A to claimant's
memorandum (emphasis supplied).[3]


     In discussing the weight that will be ascribed to the
opinions of treating sources, the pertinent regulations provide:

>      Generally, we give more weight to opinions from [the
> claimant's] treating sources, since these sources are
> likely to be the medical professionals most able to
> provide a detailed, longitudinal picture of [the
> claimant's] medical impairments(s) . . .  When we do
> not give the treating source's opinion controlling
> weight, we apply the factors listed [in this section]
> in determining the weight to give the opinion.  We will
> always give good reasons in our notice of determination

---

[3]     The opinion letter from Dr. Williams was not included in the
medical records that were before the ALJ when he rendered his
decision and claimant does not assert that, in light of that
additional evidence, the Appeals Council was "egregiously
mistaken" in failing to review the ALJ's disability
determination.  Mills v. Apfel, 244 F.3d 1, 5, (1st Cir. 2001).
Claimant challenges only the ALJ's disability determination,
which was, of course, based solely on the record before him.
Nevertheless, even if Dr. Williams' opinion had been a part of
the record before the ALJ, it would not alter the court's
resolution of this matter.

or decision for the weight we give your treating
source's opinion.

20 C.F.R. § 404.1527(d)(2).  <u>See also</u> Social Security Ruling,
<u>Policy Interpretation Ruling Titles II and XVI: Giving
Controlling Weight to Treating Source Medical Opinions</u>, SSR 96–
2p, 1996 WL 374188 (July 2, 1996).

Importantly, however, the ALJ is <u>not</u> required to give any
special significance to treating source opinions on issues
specifically reserved to the Commissioner.

> Opinions on some issues, such as the examples that
> follow, are not medical opinions, as described in
> paragraph (a)(2) of this section, but are, instead,
> opinions on issues reserved to the Commissioner because
> they are administrative findings that are dispositive
> of a case; i.e., that would direct the determination or
> decision of disability.

20 C.F.R. § 404.1527(e).  Consequently, the regulations
specifically provide that the ALJ need "not give any special
significance" to treating source opinions that a claimant is
"disabled" or "unable to work."  <u>Id</u>. at § 404.1527(e)(1).  <u>See
also</u> <u>Arroyo v. Secretary of Health & Human Services</u>, 932 F.2d 82,
89 (1st Cir. 1991) ("The ALJ was not required to accept the
conclusions of claimant's treating physicians on the ultimate
issue of disability.").

13

Plainly, then, the ALJ was not required to give controlling weight to the opinions of Dr. Williams, Dr. Surani, or Ms. Gilbert that claimant is "disabled."  Instead, the ALJ was obligated to consider (and, if appropriate, afford controlling weight to) their <u>medical</u> opinions about the nature, severity, and frequency of claimant's seizures, as well as the efficacy of (and his compliance with) the medical treatment program.  The ALJ met that obligation.  <u>See</u> Admin. Rec. at 19.  In fact, in concluding that claimant retains the RFC for most work at the medium exertional level, except for those jobs that require driving, climbing, or the use of certain machinery, the ALJ specifically adopted many of the opinions offered by claimant's treating sources and noted that:

> If not unanimous, the clear majority of [claimant's treating] sources agree the claimant's ability to walk, stand, lift, carry, and sit is unlimited and his ability to perform non-exertional activities such as seeing, hearing, fingering, feeling, handling and reaching, is also unrestricted.  The opinions vary with respect to the claimant's ability or inability to climb, balance, crouch, crawl kneel and stoop.  After considering all the evidence, I find that claimant can perform all of the foregoing without restriction, except climbing and balancing.  I find that claimant cannot safely climb or balance due to his impairment.
>
> In addition to the foregoing, the majority of opinions agreed the claimant should not drive, operate heavy machinery, or be near open machinery. . . .
>
> These limitations are based solely on the possibility that claimant may have a seizure and the danger to the

> claimant and others if he were in those situations when
> a seizure occurred.  This assessment is consistent with
> the objective medical evidence as a whole and the
> claimant's reported daily activities[,] which are
> almost unrestricted except for his inability to drive.

Admin. Rec. at 19.


The problem illustrated in this case is this: claimant's

treating sources plainly equated his seizure disorder and

corresponding inability to drive, operate heavy equipment, or

work at heights with an inability to be gainfully employed.

That, however, is a determination reserved exclusively for the

Commissioner.  And, based on a careful review of the entire

record, the court is compelled to conclude that there is

substantial evidence to support the ALJ's determination that,

while claimant's seizure disorder is undeniably severe, it does

not render him completely disabled, as that term is used in the

Act.


IV.   The ALJ's Credibility Determination.

When determining a claimant's RFC, the ALJ must review the

medical evidence regarding the claimant's physical limitations as

well as the claimant's own description of those physical

limitations, including his subjective complaints of pain.  See

Manso-Pizarro v. Secretary of Health & Human Services, 76 F.3d

15, 17 (1st Cir. 1996).  When the claimant has demonstrated that

he suffers from an impairment that could reasonably be expected

to produce the pain or side effects he alleges – here, seizures –

the ALJ must then evaluate the intensity, persistence, and

limiting effects of the claimant's symptoms to determine the

extent to which they limit his ability to do basic work

activities.

> [W]henever the individual's statements about the
> intensity, persistence, or functionally limiting
> effects of pain or other symptoms are not substantiated
> by objective medical evidence, the adjudicator must
> make a finding on the credibility of the individual's
> statements based on a consideration of the entire case
> record.  This includes medical signs and laboratory
> findings, the individual's own statements about the
> symptoms, any statements and other information provided
> by the treating or examining physicians or
> psychologists and other persons about the symptoms and
> how they affect the individual . . ..
>
> In recognition of the fact that an individual's
> symptoms can sometimes suggest a greater level of
> severity of impairment than can be shown by the
> objective medical evidence alone, 20 C.F.R. 404.1529(c)
> and 416.929(c) describe the kinds of evidence,
> including the factors below, that the adjudicator must
> consider in addition to the objective medical evidence
> when assessing the credibility of an individuals'
> statements.

Social Security Ruling, Policy Interpretation Ruling Titles II

and XVI: Evaluation of Symptoms in Disability Claims: Assessing

the Credibility of an Individual's Statements, SSR 96-7p, 1996 WL

374186 (July 2, 1996).  Those factors include the claimant's

daily activities; the location, duration, frequency, and
intensity of the claimant's pain or other symptoms; factors that
precipitate and aggravate the symptoms; the type dosage,
effectiveness, and side effects of any medication the claimant
takes (or has taken) to alleviate pain or other symptoms; and any
measures other than medication that the claimant receives (or has
received) for relief of pain or other symptoms.  Id.  See also
Avery, 797 F.2d at 23; 20 C.F.R. § 404.1529(c)(3).

It is, however, the ALJ's role to assess the credibility of
claimant's asserted inability to work in light of the medical
record, to weigh the findings and opinions of both treating
sources and other professionals who have examined him and/or
reviewed his medical records, and to consider the other relevant
factors identified by the regulations and applicable case law.
Part of that credibility determination necessarily involves an
assessment of a claimant's demeanor, appearance, and general
"believability."  Accordingly, if properly supported, the ALJ's
credibility determination is entitled to substantial deference
from this court.  See, e.g., Irlanda Ortiz, 955 F.2d at 769
(holding that it is "the responsibility of the [Commissioner] to
determine issues of credibility and to draw inferences from the

record evidence.  Indeed, the resolution of conflicts in the
evidence is for the [Commissioner] not the courts").

Here, claimant challenges the ALJ's conclusion that claimant
was "not credible with respect to the frequency and severity of
his symptoms . . .." Admin. Rec. at 19.  With regard to the
frequency of his seizures, claimant testified that he suffered
grand mal seizures at the rate of approximately one, and
sometimes two, each week.  Admin. Rec. at 27.  That testimony is
not supported in the medical record.  If it were, claimant would
be asserting that his seizure disorder actually meets medical
listing 11.02 (major motor seizure more frequently than once a
month) or 11.03 (minor motor seizures more frequently than once a
week).  He is not, and with good reason.  Consequently, the ALJ's
decision to discount that particular aspect of claimant's
testimony is well supported in the record.

Next, claimant assails the ALJ's conclusion that he was not
entirely credible when testifying about "his actions
precipitating seizures such as his consumption of alcohol or use
of recreational drugs." Admin. Rec. at 19.  Specifically,
claimant asserts that the ALJ's conclusion is not supported by
substantial evidence in the record.

18

There is, of course, no debate about the link between claimant's seizures and his use of alcohol and illicit drugs; that link is well documented in the record and claimant does not dispute that his use of those substances is known to trigger his seizures.  His focus, however, appears to be on his claim not to have consumed any alcohol in "[a]bout two and a half years," or for approximately 30 months prior to his hearing.  Admin. Rec. at 29.  Yet, the record clearly reveals that as of at least June 17, 2004 (i.e., approximately 16 months prior to claimant's hearing), he was still using both alcohol and marijuana.  Id. at 298.  See also Joint Statement of Material Facts at 7.

While claimant might understandably attempt to minimize his use of both alcohol and recreational drugs – since he fully understands that both are likely to trigger his seizures – the record plainly demonstrates that he was not being completely truthful when testifying before the ALJ.  Consequently, the ALJ was entitled to discount part of claimant's testimony as being less than entirely credible.

## Conclusion

In light of the foregoing, the court cannot conclude that the ALJ erred in making his assessment of claimant's credibility,

or that he failed to give appropriate weight to the opinions of
claimant's treating sources.  To be sure, claimant suffers from a
seizure disorder – an impairment the ALJ recognized as severe.
And, as claimant points out, the record supports (or, at a
minimum, there is no evidence to contradict) his assertion that
he has not abused alcohol or engaged in recreational drug use
since at least June of 2004.[4]

Importantly, however, there is substantial evidence in the
record to support the ALJ's conclusion that, while claimant's
seizures are not completely controlled, they are, for the most
part, well-controlled with medications (provided claimant does
not consume alcohol or drugs) and, as a consequence, claimant
remains capable of performing a wide range of work at exertional
levels up to the medium level.

Having carefully reviewed the administrative record and the
arguments advanced by both the Commissioner and claimant, the
court concludes that there is substantial evidence in the record
to support the ALJ's determination that claimant was not disabled
at any time prior to the date of the ALJ's decision.  Both the

---

[4]     Parenthetically, the court notes that the last documented
instance on which claimant admitted use of alcohol or illicit
substances was six months _after_ his alleged onset of disability.

ALJ's use of opinions offered by claimant's treating sources and his credibility determination are well-reasoned and well-supported by substantial documentary evidence.

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 10) is denied, and the Commissioner's motion to affirm her decision (document no. 11) is granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

February 13, 2007

cc:  Stanley H. Robinson, Esq.
     David L. Broderick, Esq.